Your Honors, and may it please the Court, Morgan Russell for Petitioner Kulvinder Kaur. And could you move your microphone just a little closer, just a little up? Sure, thank you. And I will try to save two minutes for rebuttal. Your Honors, the BIA's adverse credibility finding in this case was not supported by substantial evidence under this Court's Pre-Real ID Act standard, and therefore it must be reversed. Under that standard, an adverse credibility determination has to be supported by at least one actual, significant inconsistency that goes to the heart of the asylum applicant's claim. While it's true that testimony that is implausible because contradicted by other evidence in the record can also support an adverse credibility finding, such a finding cannot be supported merely by the agency's speculation or conjecture that testimony is implausible without such a contradiction to point to. Here, the Board relied on just two issues. One, a perceived implausibility in the testimony of Ms. Kaur's witness, her friend from India, Ms. Meneas. The second, a perceived inconsistency, which was simply a mistake in Ms. Kaur's direct testimony that she then did not repeat and corrected each time that it was brought up. Neither of those are the kind of significant, actual inconsistency that is enough to support an adverse credibility finding before the Real ID Act. Well, what's the difference between an inconsistency and a mistake? Well, this court has, I would direct the court's attention, for example, to the Wren case, Ari, and it's actually not cited in the briefs and it's a post-Real ID case. And I think for that reason is perhaps even more helpful because even under that more exacting standard, the court talks about the kind of innocent mistake, especially where it's momentary, not repeated, and corrected without prompting by the witness, and says that's the kind of thing that is an innocent mistake, even on an issue that is important to the claim. Here, with respect to that mistake, and just to be clear, this is at page 805 to 806 of the administrative record. It's the second issue relied upon by the board. It's after Ms. Kaur has already gone through the incidents of past persecution on which her claim is based. Her lawyer, at the end of direct, is just asking a few final questions. He asks her, oh, in which faction of the Akali Dal party did you belong to? She says, bottle group. He then asks her, and that's the mistake. The evidence from her later testimony and corroborating documents and letters is that she was a member of the Mon group of the Akali Dal political party. I think what suggested this really was just a slip of the tongue, as she later says, she says, oh, I made a mistake. I should have said Mon party. But she was asked about it, wasn't she? She's asked about the bottle group, yes. First, her lawyer moves on, asks about, oh, and what about the AISSF, the All India Sikh Student Federation, which she was actually active in, and was really, it seems from the record, the group that really was the focus of her political activities. She talks about that group for a bit and why she joined it. And then her lawyer asks her, oh, and what about the bottle group? And she says, and I think it's significant, she says, oh, the members of this group, they don't take a position on Khalistan. They don't have a position one way or the other. And then her lawyer goes back to asking her about the AISSF, and she says, oh, we believe this. We believe that. So I think even moments later, it seems like she's not identifying herself with the bottle group, even though she's just said that, which I think suggests that it was just a momentary slip of the tongue. I think more importantly, though, really, is the fact that this doesn't go,  whatever you wanna call it, doesn't go to the heart of her claim because her claim isn't about her participation in the Mann Party. The Mann Party was not mentioned in her asylum application. There's a point in the statement attached to the asylum application, and this is at page 2003 of the record, where it looks like, at the end of why, what's the, you know, what's the eupheria persecution on account of what? It says, and religion and membership in the Akali Dal, and that's crossed out. It's not mentioned, Mann Party isn't mentioned anywhere. Even the Akali Dal isn't mentioned as identified with herself elsewhere in the application. She doesn't mention the Mann Party anywhere. She doesn't bring it up herself anywhere in her testimony. Neither of the incidents in which she was arrested and beaten by police resulted from any kind of Mann Party activity. There are a lot of cases from the Punjab that really center around the Mann Party, and this court sees, has seen them, I know, but this is not one of those cases. But if she's confused about that, why doesn't that go to the heart of the claim? I think that going to the heart of her claim would mean having to do with an incident. Her claim here is based on past persecution because of her support of Khalistan and her political views in support of Khalistan, which is this desired separate Sikh nation to secede from India. The record indicates that the Mann Party also supports that goal, but none of the things that resulted in her past persecution had to do with Mann Party activities. The first time the police, after she was kidnapped, found flyers that were pro-Khalistani flyers that had to do with the boycott of the February 1992 state elections. But I think, I take your point, but if her claim is persecution based on political party or political beliefs, Khalistan, whatever, and she's confused about her political affiliation or looks inconsistent about that, then isn't that just the sort of thing that we judge adverse credibility on? Well, I don't think her claim here is based on her political party affiliation, though. No, no, I'm just talking about, obviously, she's claiming she was persecuted because on account of her political beliefs, and if she's expressing inconsistent political beliefs, basically, it has reason to doubt her testimony. Well, right, I don't think it's true, though, that she's expressed inconsistent political beliefs. I think that, and that's why I'm saying that I think it seems like, in one moment, she said the wrong thing, and that's what she explains later, and that's why I do think the Wren case, 648 F3rd 1079, is also relevant here, even if the court were to think that it does go towards the heart of her claim. The board and the IJ seem to conclude that she didn't know much about the political situation. It was difficult to believe that she was actually a political activist subject to persecution as an activist if she didn't understand the situation, and her confusion seems to indicate some confusion about that. Well, I don't think that's what the board says in its decision, and the IJ, when testimony turned towards really getting into the nitty-gritty of politics, the IJ really cut it off, and so I don't think that's the basis of the decision below, and I don't think it can be upheld on that basis. Before I end to save time, I just want to really briefly refer to the other issue. Which is the supposed implausibility of the witness's testimony. As pointed out in the brief, it's not actually inconsistent for one person to not remember something and another person to testify as to it. The BIA, I think the Jabril case that the government cites in its brief is actually a really good case to look at on this implausibility issue. The court lays out the rule that for something to be implausible, it has to be contradicted by other evidence. Here, Ms. Kaur didn't testify that she told Ms. Meneus about her uncle. There's no evidence that Ms. Meneus knew the uncle. If anything, it seems like the IJ board might have been speculating that people in small villages in India would know each other's extended families, and that's just not the kind of thing that this court's case law allows the agency to speculate about. I'll save the rest of my time. Thank you. Thank you. May it please the court, Todd Cochran on behalf of the Attorney General. The court should deny the petition for review because Ms. Kaur felt it credibly testified regarding matters that go to the heart of her claim. Her friend from India, Ms. Meneus, testified on her behalf, was unaware of some of the critical details that formed the basis why Ms. Kaur fled India, claiming persecution. In addition, she provided shifting testimony on three or four separate occasions about which faction of the political party in India to which she belonged. Both of these matters go to the heart of her claim as the agency determines. Why is the, what's your best case that says the credibility of one witness who is not the petitioner can form the basis for an adverse credibility finding? Your Honor, there is a case, Ken 595 F3rd, the pinpoint site's 1058. But in that case, there were two petitioners who offered conflicting testimony. They had a witness who also testified on their behalf as well. And there was conflicting testimony between the witness saying, I never petitioned for the petitioners to be released from prison. And the petitioner themselves put a statement in saying that they did. And the court considered all of the evidence. I get that, but that's a contradiction. But here it's the lack of knowledge of a witness that's being used as contradictory testimony. That's a different. Well, perhaps it's here that the agency determined that it was just simply not believable that Ms. Minhas given her relationship with Ms. Kaur's family, both in India and the United States. She also visited Ms. Kaur a few days after she was released from hospital after being detained, visited her, saw her injuries, talked about what happened to her, but yet was unaware of the critical detail of Ms. Kaur's uncle who was with her when she was detained. He died from his injuries a few days after he was released from detention as well. So the agency determined that was simply not believable that Ms. Kaur would know all of those details about, or Ms. Minhas would know all the details of what happened to Ms. Kaur, but be unaware of that critical detail forming the basis for her persecution claim. So what we have with regard to that issue is a lack of corroboration by this particular witness whom the IJ thought should be in a position to know. But do we also look at the fact that there were other pieces of evidence presented that would have corroborated her claim regarding her uncle, the affidavit from Mr. Singh that her uncle had died from torture, for example, the death certificate? I'm not sure I'm following the court's question on that, Your Honor. Well, the IJ basically faulted her for presenting a witness that failed to corroborate her claim, right? But in the record, we have other evidence that really did corroborate her claim. Was it a mistake for the IJ and the BIA not to acknowledge that evidence in determining whether the witness's failure to corroborate Ms. Kaur goes to the heart of her claim? I don't think it's a mistake for the IJ. The IJ considered all the evidence that was presented obviously here and determined that this critical piece of evidence about Ms. Minhas was the most critical piece that contradicted Ms. Kaur's testimony. And again, Ms. Minhas, she submitted an affidavit that said that she was, that I know Ms. Kaur very well as she is the sister of my fast friend, I think she meant to say best friend there, and I used to visit my friend's house frequently. So she was sort of saying that I am very close to this family. I should be aware of what happened to them. We live in neighboring villages. We visit all the time. I'm friends with her. And then when they came to the United States, both Ms. Kaur and Ms. Minhas are here. Ms. Minhas said she met with Ms. Kaur frequently. And then now after the, about every one to two months after the move, she was, she described Ms. Kaur as my friend's sister, which means that she is sort of like my sister. So she was testifying on her behalf, trying to establish this closeness of a relationship to corroborate Ms. Kaur's claim, but yet was unaware of this very important, very critical detail that Ms. Kaur uses the basis for part of her, the basis of her persecution claim. Regarding the Akali Dal issue, I don't believe, as my opposing counsel characterized, it was a slip of the tongue. Ms. Kaur first stated on direct examination that she belonged to the Badal faction. On cross-examination, she changed her answer to the Man faction. And then when she was confronted with evidence of those parties opposed one another, she said that they were the same. And then the evidence came out, they actually oppose. And then she changed her answer yet again to say, oh, actually my father and my brother were members of that, not me. And so as the court pointed out, the fact that she was confused is about which political activity that she was supporting does go to the heart of her claim. And she offered shifting testimony about what her political beliefs actually were. And then when she was asked to explain her inconsistency, she never provided an answer to that. So again, I think that that piece of her testimony, again, goes to the heart of her claim and establishes that she failed to demonstrate her credibility. Is there any evidence in the record that these groups are really distinct in all the villages, including hers? There was testimony offered by Ms. Coward that sometimes the factions do work together and then some family members, she had some family members belonging to one group and then she belonged to the other.  that these are opposing factions throughout the areas in which they are? including in her village? Well, there was an affidavit that she was shown during her testimony. It's at 1992 to 94 in the record, where an individual who is a leader of the man faction to which she finally settled upon saying she was a member of, who criticizes the Badal government saying that it was not preventing the genocide against Sikhs. And so I think that evidence there goes to show the factions are separate from one another. And also I think Ms. Carr's, she felt the need to change different parties to try to make her, to bolster her claim, I think shows that they are separate factions as well. But essentially her claim was based on her participation in the student group, the AI SSF, right? Yes, they do make that argument in the brief that it was based upon the AI SSF, Your Honor. And that particular group is not affiliated with either faction, right? Well, I don't know if it's related to either particular faction. I will point out regarding the argument that it's AI SSF, not the Akali Dal, that forms the basis of her claim. The State Department country conditions and asylum claims in the record of 1820 to 21, notes that the AI SSF was established in 1944 as the youth and student wing of the Akali Dal and supports the establishment of an independent Sikh state. So I think the fact that Ms. Carr is trying to distance herself from the Akali Dal point, not being for the Khalistan, I think it does not follow. Where's that in the BIA decision? I don't believe it's in the BIA's decision, Your Honor. It's just from my review of the record. Right. I guess my question was, I mean, I appreciate your answer to my question, but it seems to me that her claim is basically her involvement with the student group. And the record, aside from the State Department report, really doesn't talk about the political affiliation of that group being associated with one party or the other, right? That's all you got of the State Department report? Yes, Your Honor. Well, it seemed to me that the best argument for you was that if she was really a political activist, she should have known more about what was going on politically. But the board didn't say that. No, the board did not say that, Your Honor. It was just relied on these inconsistencies that didn't relate to her particular claim. The board relied upon her inconsistent testimony of regarding the political party, as well as the contradictory or inconsistent testimony that Ms. Minhas offered on behalf of Ms. Kaur. Yes, those two bases. And the board only needs to have one of those to go to the heart of the claim for this court to employ the substantial evidence standard and deny the petition for review, as the court knows. Any further questions? No. Thank you, counsel. Thank you. First, I don't think it's fair to characterize her explanations as shifting or testifying to shifting which party she belonged to. She gave three explanations. First, that saying that, as to why she might have made this mistake. First, you know, oh, they're, sometimes they join together, sometimes they're separate. And my uncle and my father had belonged to Bottle, so it was in my family. And then basically just, I made a mistake. I would point the court to pages 1919 and 1921 of the record. It's a Danish Immigration Service report that talks about the Akali Dahl. I think the fact that we've been talking about it just as Akali Dahl here, without specifying always between the two, suggests how a mistake could happen. At those pages in that Danish report, it talks about shifting alliances between the factions, how it's one political party with different factions, and that all of the leading factions, including the two of these that are at issue, supported the boycott of her February 1992 elections, which she was involved in. That's the boycott mentioned in those flyers. And so they did sometimes take the same positions on issues that would have been relevant to her and her family. Thank you. Thank you, counsel. The case just argued will be submitted for decision.
judges: Schroeder, Thomas, Nguyen